IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| SHARON B.,<br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br>    Defendant. | Case No. 4:21-cv-04057-SLD-JEH |

**Report and Recommendation**

Now before the Court is the Plaintiff's Motion for Summary Judgment (Doc. 13), the Defendant's Motion for Summary Affirmance (Doc. 14), and the Plaintiff's Reply (Doc. 15). This matter has been referred for a report and recommendation. The Motions are fully briefed, and for the reasons stated herein, the Court recommends the Plaintiff's Motion for Summary Judgment be denied and the Defendant's Motion for Summary Affirmance be granted.[1]

**I**

Sharon B. protectively filed an application for supplemental security income (SSI) on April 4, 2019[2], alleging disability beginning on May 6, 2009. Her SSI claim was denied initially on August 19, 2019 and upon reconsideration on March 13, 2020. Sharon filed a request for hearing concerning her application which was held on August 5, 2020 before the Honorable Chris Yokus (ALJ). At the hearing, Sharon was represented by an attorney, and Sharon and a vocational expert (VE)

---

[1] References to the pages within the Administrative Record will be identified by AR [page number]. The Administrative Record appears at (Doc. 9) on the docket.
[2] Sharon originally filed an application for disability insurance benefits (DIB) on that date as well. Upon amending her alleged onset date at her August 2020 hearing, Sharon waived her DIB claim. *See* AR 20.

1

testified. Following the hearing, Sharon's claim was denied on August 31, 2020. Her request for review by the Appeals Council was denied on February 9, 2021, making the ALJ's Decision the final decision of the Commissioner. Sharon timely filed the instant civil action seeking review of the ALJ's Decision on March 31, 2021.

## II

Sharon challenges the ALJ's August 2020 Decision for the following reasons: 1) the ALJ failed to properly consider Sharon's mental health limitations; and 2) the ALJ failed to properly consider Sharon's physical limitations.

## III

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971), *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

In order to qualify for disability insurance benefits, an individual must show that his inability to work is medical in nature and that he is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for

disability. *See* 20 C.F.R. § 416.966. The establishment of disability under the Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). The factual determination is made by using a five-step test. *See* 20 C.F.R. § 416.920. In the following order, the ALJ must evaluate whether the claimant:

1) currently performs or, during the relevant time period, did perform any substantial gainful activity;

2) suffers from an impairment that is severe or whether a combination of his impairments is severe;

3) suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;

4) is unable to perform his past relevant work which includes an assessment of the claimant's residual functional capacity; and

5) is unable to perform any other work existing in significant numbers in the national economy.

*Id.* An affirmative answer at Steps Three or Five leads to a finding that the plaintiff is disabled. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).

The plaintiff has the burdens of production and persuasion on Steps One through Four. *Id.* However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some

3

other type of substantial gainful employment. *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).

In the instant case, Sharon claims error on the ALJ's part at Step Four.

### A

At Step one, the ALJ determined Sharon had not engaged in substantial gainful activity since April 4, 2019, the application date. At Step Two of the disability analysis, the ALJ determined Sharon had the following severe impairments: general anxiety disorder; and depression. At Step Three, the ALJ determined Sharon did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. As for the "paragraph B" criteria of considered Listings 12.04 (Depressive, bipolar and related disorders) and 12.06 (Anxiety and obsessive-compulsive disorders), the ALJ found Sharon had mild limitation in understanding, remembering, or applying information and in adapting or managing oneself. The ALJ found Sharon had moderation limitation in interacting with others and in concentrating, persisting, or maintaining pace. At Step Four, the ALJ made the following residual functional capacity (RFC) finding:

> [T]he claimant has the [RFC] to perform a full range of work at all exertional levels but with the following non-exertional limitations: The individual can occasionally interact with the general public and coworkers in a low stress (i.e. having not more than occasional changes in the work setting and no fast paced production work such as assembly-line work) work environment.

AR 25. Based on that RFC, the ALJ determined at Step Five that, considering Sharon's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Sharon could perform. Thus, the ALJ concluded Sharon had not been under a disability since April 4, 2019.

**B**

Sharon first argues the ALJ made several errors with regard to her mental health limitations.  Specifically, Sharon argues that the ALJ failed to consider an abnormal November 2016 MRI and did not present it to a medical expert such that it is unclear whether the objective medical finding in that MRI affected Sharon's mental cognition and other mental health issues.  Sharon also argues the ALJ improperly rejected the psychological consultative examiner's opinion for unsupported reasons, the mental RFC did not account for Sharon's mental limitations, and the ALJ failed to take Sharon's age into account.  The Commissioner disputes it was the ALJ's obligation to more fully develop the record where Sharon was represented by counsel at the hearing who did not point to the MRI or mention brain abnormalities at the hearing.  The Commissioner also argues that the ALJ discounted, in part, the psychological consultative examiner's opinion for good reason, and the ALJ used sufficient language to account for Sharon's moderate limitation in concentration, persistence, or pace.

**1**

Via function report and hearing testimony, Sharon complained of difficulty concentrating and remaining focused due to anxiety and depression, and she complained of depression which affected her motivation.  The ALJ accordingly considered the record medical evidence pertaining to Sharon's mental health symptoms, specifically noting that Sharon's "medical history is significant for treatment for mental health[.]"  AR 27.  The ALJ considered medical records which revealed that Sharon was hospitalized in October 2018 after being off her medication and her depression significantly worsened, that Sharon visited the emergency department in April 2019 at which time she had worsening anxiety symptoms and explained she had not taken any anxiety medications since August 2018, and that Sharon visited the emergency department in December 2019 at

which time she reported increased anxiety symptoms after running out of her anxiety medication for one month. Sharon visited the emergency department in May and July 2019 and July 2020 for medication refills. The ALJ also considered the medical records indicated Sharon's symptoms stabilized with medication, she denied depression or suicidal or homicidal ideations, she reported her medications helped, and on examination she was cooperative with appropriate mood and affect. The ALJ logically concluded from the foregoing that Sharon's symptoms improved with regular and consistent compliance with treatment, further tracing the path of his reasoning by noting Sharon's own reports in January and February 2020 during examination when she reported her medications were helping and she was not experiencing symptoms. *See Spicher v. Berryhill*, 898 F.3d 754, 757 (7th Cir. 2018) (explaining that the substantial evidence standard is satisfied where the ALJ builds an accurate and logical bridge from the evidence to his conclusion).

Sharon appears to believe that the single document neither the ALJ nor State Agency non-examining doctors reviewed – the November 9, 2016 MRI (AR 813-14) – was significant objective evidence that simultaneously supported her complaints of mental limitations and revealed the ALJ both played doctor and ignored evidence contrary to his findings as to those limitations. The MRI Impression stated, among other things:

> Multiple small, nonspecific foci of signal abnormality within the cerebral white matter may reflect chronic small vessel ischemic change or a chronic demyelinating process, such as multiple sclerosis. Clinical correlation is recommended . . . A nonspecific 6 mm focus of enhancement is present within the pons. Follow-up of this finding is recommended.

AR 813. However, an ALJ need not mention every piece of evidence. *See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (stating that while an ALJ is not required to address every piece of evidence, the ALJ "must provide some glimpse

into her reasoning"). The ALJ's failure to consider that one document which was not definitive in any event ("may reflect," clinical correlation and follow-up finding "recommended") does not undermine the substantial evidence which the ALJ explicitly considered and to which he cited in support of his findings as to Sharon's mental health limitations.[3] *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (explaining that in the context of administrative law, "substantial" presents a threshold for evidentiary sufficiency that "is not high"); *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012) ("if reasonable minds can differ over whether the applicant is disabled, we must uphold the decision under review"). Stated another way, the document was objective medical evidence which nevertheless left to the ALJ the obligation to consider whether the evidence on the whole supported the extent of mental limitation Sharon actually experienced. As for the ALJ's obligation to consider the entire record, his conclusions were formed after his review of the medical records juxtaposed with Sharon's complaints and after his consideration of the medical opinions of record.

Though an ALJ has an obligation to develop the record, the burden to prove disability remains with the claimant. *Thomas v. Colvin*, 745 F.3d 802, 807 (7th Cir. 2014 (stating an ALJ "is under an obligation to develop a full and fair record"); *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004) ("It is axiomatic that the claimant bears the burden of supplying adequate records and evidence to prove their claim of disability") (citing 20 C.F.R. § 404.1512[4]). The Court cannot find that the balance tipped more towards the ALJ's obligation so that his failure to

---

[3] Neither party makes mention of a brain MRI done on 5/11/2020 which included similar findings of "[m]oderate white matter chronic small vessel ischemia; scattered abnormal/T2 white matter signals without postcontrast enhancement," but otherwise *negative* findings and with the following impression: "*Negative* MRI head on back on chronic microvascular ischemic demyelination." AR 676 (emphasis added).
[4] 20 C.F.R. § 416.912 (SSI).

7

explicitly refer to the MRI or subject it to further medical scrutiny was harmful error. This is particularly so where, as the Commissioner points out, Sharon, who was represented by counsel, did not at relevant times point to or reference the abnormal MRI findings. *Compare Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009) (explaining the ALJ's duty to develop a full and fair record is enhanced when a claimant *appears without counsel*) (emphasis added).

**2**

As for consultative psychological examiner Tracie Hitter, Ph.D.'s July 2019 examination, the ALJ considered the details of the report and found it "somewhat persuasive." AR 27. He articulated that Dr. Hitter's opinion appeared to be largely based on Sharon's subjective reporting instead of objective testing given that Sharon obtained a perfect score on a Mini-Mental State Examination and Dr. Hitter's general observations revealed some symptoms associated with anxiety. The ALJ found persuasive Dr. Hitter's opinion that Sharon was "clearly" capable of following instructions and carrying out simple tasks where the opinion was "consistent with the record and well supported by the evidence." AR 27. The ALJ reasonably found Dr. Hitter's statement that Sharon's impairments and associated symptoms limited her ability to obtain and maintain employment of no persuasive value "as that is reserved for the Commissioner." *Id.*; *see, e.g.*, 20 C.F.R. § 416.920b(c)(3)(i) (providing that "[s]tatements that you are or are not disabled . . . able to work, or able to perform regular or continuing work" are statements on issues reserved to the Commissioner). It was obviously Dr. Hitter's qualification that Sharon's anxiety symptoms would interfere with her ability to perform simple tasks on a regular basis that the ALJ found less persuasive in light of his analysis of the medical records, addressed *supra*, and his consideration of other record evidence. Earlier in the Decision, the ALJ determined Sharon had a moderate limitation in concentration, persistence, or pace where she reported difficulty

completing tasks and paying attention and struggling with concentration, but she was also able to get around by driving or taking public transportation, could shop in stores once a week for three hours, could manage her finances, could watch television and play with her dogs on a daily basis, at times denied difficulty with concentration, and had intact attention and concentration.

Sharon argues the ALJ improperly found less persuasive Dr. Hitter's opinion to the extent it was based only on Sharon's subjective report where, instead, Dr. Hitter gave her medical opinion based on a thorough clinical examination and mental health professionals must rely on a patient's self-reporting along with observation. But an ALJ, indeed, is not required to rely on doctors' statements that simply recite a claimant's own subjective complaints, and the ALJ observed Dr. Hitter's examination was a only a "limited" one. *Cooley v. Berryhill*, 738 F. App'x 877, 881 (7th Cir. 2018) (unpublished opinion); AR 27. The remainder of Sharon's argument as to the ALJ's consideration of Dr. Hitter's opinion amounts to an invitation for the Court to impermissibly reweigh the evidence to come out differently on how persuasive Dr. Hitter's opinion was. *See Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999) (providing that a reviewing court "may not decide the facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner to decide whether a claimant is or is not disabled"). Sharon says Dr. Hitter's opinion reveals Sharon had *marked* limitations in concentration, persistence, and pace, and that opinion is supported by other evidence of record including multiple hospitalizations and use of medication and its side effects. Notably, Sharon cites hospitalizations that occurred considerably before (2009) the timeframe the ALJ considered (May 4, 2019 and onward), she cites a hospitalization the ALJ expressly considered, she cites generally other records the ALJ expressly considered, and she cites records of her ongoing medication use, the fact of which the ALJ expressly considered.

To the extent the ALJ found Dr. Hitter's opinion less persuasive for reasons the ALJ found State Agency Ph.D. and Psy.D. opinions more persuasive, Sharon unconvincingly attempts to cast doubt on the latter's opinions to the extent they considered prior evidence not made part of the record. The ALJ considered the State Agency doctors' opinions in light of the *timely* record evidence that was actually before him: "Both opine the claimant is capable of carrying out and remembering simple tasks, make simple decisions, and tolerate occasional interpersonal interactions. This is consistent with the record and supported by the evidence. Specifically, this is consistent with Dr. Hitter's examination and opinion." AR 29. Ultimately, the ALJ properly considered the opinion evidence of record. *See, e.g.*, 20 C.F.R. § 416.920c(b)(2) (providing the factors of supportability and consistency "are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions . . . to be").

### 3

As for Sharon's argument that her cited Seventh Circuit precedent precludes finding the ALJ's mental RFC actually accounted for her moderate limitation in concentration, persistence, or pace, the Seventh Circuit has made clear that an ALJ need not use any "magic words" in formulating a person's RFC. *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019). In the very case Sharon cites, the Seventh Circuit specifically stated that, "The law does not require ALJs to use certain words, or to refrain from using others, to describe the pace at which a claimant is able to work." *Martin v. Saul*, 950 F.3d 369, 374 (7th Cir. 2020). Rather, "the ALJ must account for the totality of a claimant's limitations in determining the proper RFC." *Id*.

Here, Sharon testified at the hearing that when she cycled from anxiety to depression, it was very hard for her to concentrate. She described the cycle as follows: "Even though the anxiety is down, when you're in a depression cycle,

your concentration isn't there. So it's hard to concentrate." AR 57. She testified to concentration issues with anxiety as well. She testified that due to her depression and anxiety and that she never knew when they would "come" or "if I'm going to have anxiety attacks or my heart starts racing and then I feel I have to run out," she was no longer at the level she was when she worked. AR 60. In his Decision, the ALJ acknowledged Sharon's reports that her anxiety and depression caused her difficulty concentrating and remaining focused, her reports that anxiety affected her ability to maintain employment, her report that she had increased stress and anxiety upon being evicted from her place, and her report that she struggled to handle stress or changes in routine. The ALJ did not fail to account for Sharon's concentration difficulties that accompanied her anxiety which, in turn, increased with changes in her situation where he limited her to a work environment that had "no more than occasional changes in the work setting." AR 25. It is likewise apparent that he included reduced production demands - to "no fast paced production work such as assembly-line work" - in an effort to keep Sharon's anxiety reduced so as not to cause her problems with persistence or pace. *Id*.

Additionally, as the Commissioner points out, a "moderate limitation" is defined by regulation to mean that functioning in that area is "fair." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00F(2)(c). The Seventh Circuit has agreed with the Commissioner that "'fair' in ordinary usage does not mean 'bad' or 'inadequate.'" *Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021) (observing that "a 'moderate' limitation in performing at a consistent pace seems consistent with the ability to perform simple, repetitive, tasks at a consistent pace"). The Seventh Circuit cases taken altogether make clear that whether a claimant's "moderate" limitations in

11

concentration, persistence, or pace were sufficiently accounted for is a case-specific inquiry. In this specific case, the ALJ did err in his formulation of the mental RFC.[5]

### 4

Finally, Sharon argues the ALJ failed to take her age into account. *See* 20 C.F.R. § 416.963(a) ("we consider advancing age to be an increasingly limiting factor in the person's ability to make [an adjustment to other work]"). Sharon acknowledges that the "grid" rules typically apply to exertional limitations, but she nevertheless contends that her advanced age should have had a greater bearing upon the ALJ's analysis of her claim. In the Decision, the ALJ recognized that Sharon was an individual of advanced age (55 years old) on the date her application was filed. The ALJ recognized that he was required to consider Sharon's RFC, age, education, and work experience in conjunction with the Medical-Vocational Guidelines (the "grid" rules). The ALJ recognized that Sharon's ability to perform work at all exertional levels had been compromised by non-exertional limitations, and so, to determine the extent to which those limitations eroded the occupational base of unskilled work at all exertional levels, he turned to the VE. Clearly, the ALJ took Sharon's age into account. Sharon does not argue the ALJ incorrectly applied the grid rules. There was nothing amiss in the ALJ's consideration of Sharon's age.

### C

Sharon also argues that the ALJ's failure to include physical exertional limitations in the RFC was caused by the ALJ's failure to inquire further into Sharon's physical limitations, and had the ALJ done so and made a sedentary finding, the grid rules would have qualified Sharon for disability. She says there

---

[5] The Court need not address Sharon's additional argument that there "is no evidence in the record indicating that the Plaintiff would be capable of [the semi-skilled jobs the VE identified]." Plf's MSJ (Doc. 13 at pg. 8). The Commissioner correctly responded that the identified jobs were, in fact, unskilled jobs, and Sharon made no further mention of her original argument as to semi-skilled jobs in her Reply.

was missing evidence of a right ankle x-ray in a record that indicated she had pain in her feet for two or three months prior to the x-ray, she experienced ankle swelling, and she reported she could walk for 10 minutes. She argues the ALJ's failure to consider the combination of her impairments, including issues with her back, hip pain, and seizures, further supports her contention that he insufficiently considered her physical limitations. The Commissioner counters that Sharon offers no objective evidence, as was her burden, that her physical impairments caused any functional limitations of symptoms that significantly limited her ability to perform basic work activities.

With regard to evidence pertaining to Sharon's right ankle, even assuming the ALJ committed error in failing to expressly consider that evidence, the error was harmless. *See McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) (explaining that administrative error may be harmless and thus a court ought not remand a case to the ALJ where it is convinced that the ALJ would reach the same result). First, as explained *supra*, an ALJ need not provide a written evaluation of every piece of evidence. Second, record evidence of Sharon complaining of ankle swelling and right ankle pain appeared during only a one-month period of time. *See* AR 592 (4/1/2019 right ankle x-ray); AR 593 (3/29/2019 complaining of right foot/ankle pain); AR 594 (3/29/2019 abnormal swelling to the right ankle/foot); AR 753 (3/9/2019 stating for last two months Sharon had feet swelling); AR 754 (3/9/2019 swelling present in right ankle and left medial ankle). She does not point to evidence that she continually complained throughout the relevant period about pain or swelling in her ankles. Third, though the record is replete with references to a *history* of right ankle surgery, the State Agency M.D.s observed that fact in their review of Sharon's medical records and noted there was no report of the x-ray findings. At the initial level, the State Agency doctor nevertheless concluded Sharon's impairments did "not appear to be associated with significant

13

physical functional limitation at this time or restrict claimant's ability to sustain basic work activities." AR 88. At the reconsideration level, a second State Agency doctor concluded similarly and added, "There is no evidence of any significant ongoing physical issues resulting in deficits which have lasted or are expected to last 12 months. Therefore he [sic] physical condition can be considered non-severe." AR 133. The ALJ, in turn, found persuasive the State Agency doctors' opinions that Sharon's physical impairments were non-severe as consistent with the record which "largely focuses on the claimant's mental impairments with few treatment records for physical impairments. Physical examinations throughout the relevant period were consistently normal. Further, these opinions are well supported with thorough explanation." AR 29. Earlier in the Decision, at Step Two, the ALJ explicitly identified as non-severe impairments Sharon's hypertension and sinusitis for the reason that there was "no indication of related functional problems with these impairments." AR 22. The ALJ explicitly identified as non-medically determinable impairments Lyme disease, lupus, seizures, and back and hip pain because objective testing and imaging revealed no etiology for seizures and no evidence of Lyme disease or supportable evidence of lupus. AR 23.

      The foregoing permits the Court to trace the path of the ALJ's reasoning from evidence to his conclusion that Sharon had only severe medically determinable *mental* impairments. That reasoning was supported by substantial evidence given the minimal of objective evidence (and even subjective evidence as to her ankles) pertaining to Sharon's ankles, back and hip, given that the ALJ relied upon the State Agency doctors' opinions, and given that there were no contrary medical opinions in the record. *See Gedatus v. Saul*, 994 F.3d 893, 905 (7th Cir. 2021) (finding the ALJ reasonably relied on state agency physicians where he gave solid, substantiated reasons for giving them more weight than to the plaintiff's claims

about the limiting nature of her symptoms, and where the plaintiff offered no opinion from any doctor indicating greater limitations). Sharon says the record documents other issues such as back pain, hip pain, and seizures, but she identifies no records the ALJ overlooked and cites no records in support of that statement whatsoever. Many times, records indicated Sharon was negative for back pain, she denied back pain, and she had a normal gait. An EEG was normal. The ALJ stated at Step Three that the "considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's [RFC]." AR 22. Nothing in his Decision or in the Court's review of the record evidence reveals he did otherwise. Fatal to Sharon's arguments regarding the ALJ's consideration of her physical limitations is that a claimant's own "statements about [her] pain or other symptoms will not alone establish that [she is] disabled." 20 C.F.R. § 416.929(a). The Court thus recommends the ALJ's Decision be affirmed.

## IV

For the reasons set forth above, it is recommended that: 1) the Plaintiff's Motion for Summary Judgment (Doc. 13) be denied; 2) the Defendant's Motion for Summary Affirmance (Doc. 14) be granted; 3) The Clerk of Court be directed to enter judgment as follows: "IT IS ORDERED AND ADJUDGED that the decision of the Defendant, Kilolo Kijakazi, Acting Commissioner of Social Security, denying benefits to the Plaintiff, Sharon B., is AFFIRMED."; and 4) this matter be terminated.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk within fourteen (14) days after service of this Report and Recommendation. FED. R. CIV. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal.

*Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

*It is so recommended.*

Entered on May 17, 2022.

<u>s/Jonathan E. Hawley</u>
U.S. MAGISTRATE JUDGE