UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| SHARON B., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:21-cv-04057-SLD-JEH |
| ) | |
| KILOLO KIJAKAZI,[1] ) | |
| ) | |
| Defendant. ) | |

ORDER

Before the Court are Plaintiff Sharon B.'s motion for summary judgment, ECF No. 13; Defendant Commissioner of Social Security Kilolo Kijakazi's ("the Commissioner") motion for summary affirmance, ECF No. 14; Magistrate Judge Jonathan E. Hawley's report and recommendation ("R&R"), ECF No. 16, recommending that the Court grant the Commissioner's motion and deny Sharon's; and Sharon's objection to the R&R, ECF No. 17. For the reasons that follow, the objection is OVERRULED, the R&R is ADOPTED, the motion for summary judgment is DENIED, and the motion for summary affirmance is GRANTED.

## BACKGROUND[2]

### I.    Procedural Background

On April 4, 2019, Sharon filed an application for supplemental security income ("SSI"),[3] alleging disability beginning May 6, 2009.[4] Her claim was denied initially and upon reconsideration. Sharon then requested a hearing, which took place before an administrative law

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi, Acting Commissioner of Social Security, is substituted for her predecessor. The Clerk is directed to update the docket accordingly.
[2] The administrative record can be found at ECF No. 9. Citations to the record take the form: R. __.
[3] Sharon initially filed an application for disability insurance benefits as well but waived it at her August 2020 hearing. R. 20, 44–45.
[4] In the hearing, Sharon's attorney stated the initial alleged onset date was May 5, 2009. R. 44. The Court takes the May 6, 2009 date from the ALJ's decision. *See* R. 19.

judge ("ALJ") on August 5, 2020. At the hearing, Sharon amended her alleged onset date to February 6, 2018. The ALJ issued a decision denying Sharon's claims for benefits on August 31, 2020. The Appeals Council denied her request for review on February 9, 2021; as such, the ALJ's August 31, 2020 decision is the final decision of the Commissioner. *See Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). Sharon timely filed this suit, seeking judicial review pursuant to 42 U.S.C. § 405(g),[5] Compl. 1, ECF No. 1. Sharon filed a motion for summary judgment on September 29, 2021, and the Commissioner filed a motion for summary affirmance on October 27, 2021. The matter was referred to Judge Hawley for a recommended disposition, and he entered an R&R on May 17, 2022. Sharon filed an objection on May 31, 2021.

**II.     ALJ Decision**

The ALJ conducted the standard five-step sequential analysis set forth in 20 C.F.R. § 416.920(a)(4), concluding that Sharon was not disabled during the relevant period. R. 20. At step one, he found that Sharon had not engaged in substantial gainful activity since April 4, 2019, the application date. R. 22. At step two, he found that Sharon had the following severe impairments: general anxiety disorder and depression, and the following non-severe impairments: hypertension and sinusitis. R. 22. At step three, the ALJ found that the severity of Sharon's impairments, considered singly and in combination, did not meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 23. Next, he found that Sharon had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but could only occasionally interact with the general public and coworkers in a low stress work environment. R. 25. At step four, the ALJ found that Sharon was unable to

---

[5] 42 U.S.C. § 1383(c)(3) provides that "[t]he final determination of the Commissioner of Social Security" on an application for supplemental security income "shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."

perform her past relevant work. R. 29. At step five, he found that, considering Sharon's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she could perform. R. 30. Accordingly, the ALJ found that Sharon was not disabled. R. 31.

## DISCUSSION

### I. Legal Standards

When a matter dispositive of a party's claim or defense is referred to a magistrate judge, the magistrate judge will "enter a recommended disposition, including, if appropriate, proposed findings of fact." Fed. R. Civ. P. 72(b)(1). A party may file written objections to the R&R within fourteen days of its service. *Id*. 72(b)(2). The district judge will then "determine de novo any part of the magistrate judge's disposition that has been properly objected to." *Id*. 72(b)(3). Any unobjected portions will be reviewed for clear error only. *Johnson v. Zema Sys. Corp*., 170 F.3d 734, 739 (7th Cir. 1999).

In cases in which an ALJ has denied social security benefits to the plaintiff, the court "will uphold [the] ALJ's decision as long as the ALJ applied the correct legal standard, and substantial evidence supports the decision." *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004). "Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks omitted). While the ALJ "is not required to provide a complete and written evaluation of every piece of testimony and evidence," he "must build a logical bridge from the evidence to his conclusion." *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015) (quotation marks omitted). The court reviewing the ALJ's decision will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner" but must nevertheless "conduct a

critical review of the evidence." *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (quotation marks omitted).

## II.     Analysis

At summary judgment, Sharon argues that the ALJ failed to properly consider her mental health limitations and her physical limitations. Mot. Summ. J. 4–11. Regarding her mental health limitations, she believes that the ALJ should have addressed an MRI of her brain taken on November 9, 2016, and obtained a medical expert opinion to determine how the MRI's findings affected her abilities; that he failed to give adequate weight to the opinion of consultative examiner Dr. Tracie Hitter; that the RFC does not account for Sharon's limitations in concentrating, persisting, and maintaining pace; and that he failed to account for her age. *Id*. at 4–9.[6] With regard to her physical limitations, Sharon argues that the ALJ erred by failing to account for her ankle pain and consider her physical impairments in combination. *Id*. at 9–11.

Judge Hawley finds that the ALJ's failure to consider the November 9, 2016 MRI—which was "not definitive in any event"—"d[id] not undermine the substantial evidence which the ALJ explicitly considered and to which he cited in support of his findings as to Sharon's mental health limitations." R&R 6–7. He further concludes that the ALJ properly considered the opinion evidence in the record; adequately accounted for Sharon's limitations in concentrating, persisting, and maintaining pace in her mental RFC; and addressed her age. *Id*. at 8–12. As for Sharon's argument about her physical limitations, Judge Hawley finds that the ALJ's conclusion that Sharon had no severe medically determinable physical impairments was

---

[6] Sharon also disputes that she could perform the jobs the vocational expert found she could carry out, as, she claims, they were semi-skilled jobs, and "[t]here was no evidence in the record indicating that [she] would be capable of such work." Mot. Summ. J. 8. But as the Commissioner and Judge Hawley point out, *see* Mem. Supp. Mot. Summ. Affirmance 4, ECF No. 14-1; R&R 12 n.5, the jobs the vocational expert assigned Sharon were actually unskilled jobs, *see* R. 30.

supported by substantial evidence. *Id*. at 12–15. Accordingly, he recommends that the Court deny Sharon's motion for summary judgment and grant the Commissioner's. *Id.* at 15.

Sharon makes two objections to the R&R: first, that Judge Hawley erred in applying *Spicher v. Berryhill*, 898 F.3d 754 (7th Cir. 2018), to this case, and second, that he was incorrect in finding that the ALJ did not err by failing to address the November 9, 2016 MRI. Obj. 1–4. The Court will review these two issues de novo. Neither party objects to Judge Hawley's remaining findings, and having reviewed the motions, record, and R&R, the Court finds that those portions of the R&R are not clearly erroneous.

    **a. Case Law Cited**

Sharon objects to Judge Hawley's citation to *Spicher*, arguing that his application of the principle that the ALJ must build an accurate and logical bridge from the evidence to his conclusion, 898 F.3d at 757, was incorrect because *Spicher* involves only physical disability, whereas this case also involves mental impairment. Obj. 1–2. The Court does not find that the citation to *Spicher* by itself requires remand. The R&R mentions *Spicher* only once—for the proposition that "the substantial evidence standard is satisfied where the ALJ builds an accurate and logical bridge from the evidence to his conclusion." R&R 6. Nothing in the R&R suggests that Judge Hawley relies on *Spicher* for anything other than its articulation of this standard, which is widely accepted in the Seventh Circuit. *See, e.g.*, *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022) (citing to the "logical bridge" standard in a case involving mental impairments (quotation marks omitted)); *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021) (same). Indeed, Sharon herself points to that same standard in her motion for summary judgment. Mot. Summ. J. 10. Merely because the case from which Judge Hawley draws a general principle has different factual circumstances than this one does not necessitate remand.

It is unclear whether Sharon's objection to the citation to *Spicher* goes deeper than this. *See* Obj. 1 (titling the section "The R&R Should Not Be Accepted Because the Magistrate Judge Fails to Apply Correct Caselaw to Underpin his Rationale"); *id*. at 2 (arguing that Judge Hawley "applies [*Spicher*] incorrectly"); *id*. ("Reliance on *Spicher* is error, and *de novo* review should keep [a different case involving mental impairments] in mind when evaluating the ALJ's assessment of the evidence of Sharon's mental limitations."). It is possible that Sharon also intends to argue that the ALJ should have given increased deference to her subjective complaints regarding her mental impairments. *See id*. at 1–2. Even if she had properly made this objection,[7] the Court would still find that remand is not warranted.

In her motion for summary judgment, Sharon makes the argument that the ALJ should have given more weight to her subjective reports of symptoms in his assessment of Dr. Hitter's opinion. Mot. Summ. J. 5–8. Judge Hawley finds that the ALJ properly evaluated the opinion, R&R 8–10, and this Court agrees. The Seventh Circuit has rejected the idea that "subjective statements are to be given zero weight," *Adaire v. Colvin*, 778 F.3d 685, 688 (7th Cir. 2015) (quotation marks omitted), but an ALJ may consider the fact that a medical opinion recites a claimant's subjective complaints without any clinical support or substantiation in assigning little weight to that opinion, *see Cooley v. Berryhill*, 738 F. App'x 877, 880–81 (7th Cir. 2018). In fact, Social Security regulations list supportability and consistency as the most important factors to be considered in evaluating a medical objection. 20 C.F.R. § 416.920c(b)(2).

Here, the ALJ discussed Dr. Hitter's opinion in depth, finding it "somewhat persuasive." R. 27. He determined that Dr. Hitter's conclusion that Sharon "was 'clearly' capable of

---

[7] Objections to R&Rs "must specifically identify the portions of the [R&R] to which objection is made and the basis for the objection." Civil LR 72.2(B). The scope of Sharon's objection here is far from clear. In the future, Sharon's counsel is cautioned to clarify the portion of the R&R to which she objects and the objection's basis.

following instructions and carrying out simple tasks" was "consistent with the record and well supported by the evidence," pointing to Sharon's perfect score on a Mini-Mental State Examination. R. 27. He found less persuasive Dr. Hitter's opinion that Sharon's anxiety symptoms would interfere with her ability to perform tasks on a regular basis, as this was "largely based on [Sharon's] subjective reporting instead of the objective testing." R. 27. As for Dr. Hitter's general conclusions on Sharon's ability to maintain employment, the ALJ disregarded these statements, as that is an issue reserved to the Commissioner. R. 27; *see* 20 C.F.R. § 416.920b(c)(3). The Court finds that the ALJ "sufficiently articulate[d] [his] assessment of the evidence to . . . enable [the court] to trace the path of [his] reasoning." *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002) (quotation marks omitted). To the extent that Sharon is asking the Court to assign greater weight to her subjective reports of symptoms to Dr. Hitter, this is outside the Court's purview. *See Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) ("[The court is] not allowed to displace the ALJ's judgment by reconsidering facts or evidence.").[8]

    b. **November 9, 2016 MRI**

Sharon's second objection focuses on the November 9, 2016 MRI, which she believes the ALJ erred in ignoring. Obj. 2–4. In her motion for summary judgment, Sharon points to some of the results of the MRI, Mot. Summ. J. 4, which show "[m]ultiple small, nonspecific foci of signal abnormality within the cerebral white matter[, which] may reflect chronic small vessel ischemic change or a chronic demyelinating process, such as multiple sclerosis," as well as "[a]

---

[8] The Court notes that the ALJ did assign Sharon certain limitations based on her subjective complaints, *see, e.g.*, R. 23 (assigning Sharon a moderate limitation in interacting with others at step three because Sharon "indicated she does not get along well with others and does not want to socialize with anyone" (citing R. 322)); R. 24 (assigning a moderate limitation in concentrating, persisting, or maintaining pace based on Sharon's indication that she had difficulty completing tasks and paying attention (citing R. 322)), and provided in her RFC that she could only occasionally interact with the general public and coworkers in a low stress work environment, R. 25.

nonspecific 6 mm focus of enhancement . . . present within the pons," R. 813. These impressions are accompanied with the notation that clinical follow-up and correlation is recommended. R. 813. As Sharon notes, no medical opinion in the record provides an interpretation of the MRI or explains whether any limitations should be assigned based on the results. *See* Mot. Summ. J. 4. Sharon argues that in the absence of such an opinion, "it is unclear whether this objective medical finding has affected [her] mental cognition and other mental health issues" and that the ALJ should have called a medical expert to testify as to the significance of the findings. *Id*. at 4–5.

While "an ALJ does not need to discuss every piece of evidence in the record, [he] may not analyze only the evidence supporting [his] ultimate conclusion while ignoring the evidence that undermines it." *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014); *see Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012) (stating that an ALJ "may not ignore entire lines of contrary evidence"). Here, the ALJ did not address the November 9, 2016 MRI in his decision. But the MRI itself is not evidence that undermines the ALJ's conclusion that Sharon is not disabled. The MRI—which was taken more than a year before the date Sharon filed for SSI[9]—notes the presence of foci of signal abnormality within the cerebral white matter and a focus of enhancement within the pons, but it does not indicate symptoms Sharon was experiencing as a result or suggest limitations she would accordingly need. *See* R. 813. It suggests that the results *could* reflect issues such as chronic small vessel ischemic change or a chronic demyelinating process, but these are merely possibilities and provide no information as to what Sharon was

---

[9] 20 C.F.R. § 416.912(b) provides that "[b]efore [an ALJ] make[s] a determination that [a claimant is] not disabled, [the ALJ] will develop [the claimant's] complete medical history for at least the 12 months preceding the month in which [the claimant] file[s] [her] application unless there is a reason to believe that development of an earlier period is necessary or unless [the claimant] say[s] that [her] disability began less than 12 months before [she] filed [her] application."

actually experiencing.  *See* R. 813.  Sharon points to a number of clinical manifestations that such MRI results could accompany, Mot. Summ. J. 4, but again, there is no evidence that she has or had any of these conditions.  As such, the MRI does not constitute an "entire line[] of contrary evidence" the ALJ erred in ignoring.  *Arnett*, 676 F.3d at 592.[10]

Pointing to the notations that follow up and clinical correlation were recommended, Sharon contends that the ALJ had a responsibility to appoint a medical expert to interpret the MRI.  Mot. Summ. J. 4–5.  While "[a]n ALJ is under an obligation to develop a full and fair record, . . . this obligation is not limitless."  *Thomas v. Colvin*, 745 F.3d 802, 807 (7th Cir. 2014) (quotation marks omitted).  Rather, "a significant omission is usually required before th[e] court will find that the [Commissioner] failed to assist . . . claimants in developing the record fully and fairly."  *Nelms*, 553 F.3d at 1098 (second alteration in original) (quotation marks omitted) (finding a two-year evidentiary gap to be a significant omission in a case with a *pro se* claimant).  As the Seventh Circuit has noted, "[t]he difficulty is that no record is 'complete'—one may always obtain another medical examination, seek the views of one more consultant, wait six months to see whether the claimant's condition changes, and so on."  *Kendrick v. Shalala*, 998 F.2d 455, 456–57 (7th Cir. 1993).  Were a court to "[t]ak[e] 'complete record' literally," this "would be a formula for paralysis."  *Id*. at 457.

---

[10] Sharon cites to *Akin v. Berryhill*, 887 F.3d 314 (7th Cir. 2018), and *McHenry v. Berryhill*, 911 F.3d 866 (7th Cir. 2018), for the proposition that ALJs should not "play[] doctor" by interpreting objective medical evidence like MRIs themselves.  Mot. Summ. J. 4–5 & n.1 (quotation marks omitted).  But in those cases, the ALJs developed their own interpretations of MRI reports.  *See Akin*, 887 F.3d at 317–18 (noting that the ALJ determined himself that MRI results were consistent with his evaluation of the claimant's impairments); *McHenry*, 911 F.3d at 871 (finding that "the ALJ impermissibly assessed the MRI report on his own without the assistance of a medical expert"); *but see Olsen v. Colvin*, 551 F. App'x 868, 874–75 (7th Cir. 2014) (finding that the ALJ did not "play[] doctor" by "summariz[ing] the results of each MRI and dr[awing] a conclusion from those diagnostic tests that [the claimant's] abnormalities mostly were mild" where the claimant "ha[d] not made a serious effort to show that the ALJ's conclusion [wa]s incorrect" and "never provided an opinion from a physician about the conclusion to be drawn from the various MRIs" (emphasis omitted) (quotation marks omitted)).  Here, the ALJ did not provide his own interpretation of the November 9, 2016 MRI.

The Court does not find that remand is required here. The absence of a medical expert opinion on a single MRI taken well more than 12 months before the date of filing and the alleged onset date, which does not itself indicate any functional limitations or impairment beyond a general recommendation for clinical follow-up, and where the ALJ otherwise sufficiently built a logical bridge between the evidence and his conclusion, is not a significant omission. *See also Summers v. Berryhill*, 864 F.3d 523, 527 (7th Cir. 2017) ("It [is] [the claimant's] burden, not the ALJ's, to prove that she [is] disabled.").

This is especially so given that Sharon was represented by an attorney in the proceedings before the ALJ, R. 37 —"a claimant represented by counsel is presumed to have made his best case before the ALJ," *Skinner v. Astrue*, 478 F.3d 836, 842 (7th Cir. 2007); *cf. id.* ("[N]o such presumption attaches to an unrepresented claimant."). And it is "reasonable for [an] ALJ to proceed on a record that [the claimant's] . . . counsel [is] satisfied with." *Harris v. Saul*, 835 F. App'x 881, 885 (7th Cir. 2020). At the hearing, the ALJ asked Sharon's attorney if she had reviewed the record, and she indicated she had no objections to it. R. 42. She stated that she was waiting on a few existing medical records to arrive from three different sources, R. 42–43, and the ALJ granted her thirty days to obtain those records and add them to the record, R. 44. Sharon's attorney, however, did not otherwise indicate she considered the record incomplete, nor did she argue that the ALJ needed to appoint a medical expert to opine on the November 9, 2016 MRI before the hearing could proceed. *See Harris*, 835 F. App'x at 885 (finding that the "record was adequate to permit an informed decision" where the claimant's "counsel both wrote to the ALJ that the record was complete and stated that he had no objection to it at the hearing"). In the absence of any such indication, it was reasonable for the ALJ to proceed on a record Sharon's counsel considered complete. *See, e.g.*, *Luigi B. v. Saul*, No. 18 CV 7392, 2021 WL 83508, at *8

(N.D. Ill. Jan. 11, 2021) (finding that, where the claimant never asked the ALJ to appoint a medical expert to produce an opinion he later claimed must be obtained for the record to be complete, "the appropriate inference to be drawn . . . [was] that [the] [c]laimant decided that another expert opinion would not help [him]" (fifth alteration in original) (quotation marks omitted)); *Vivian T. v. Saul*, No. 19 C 2600, 2021 WL 2529611, at *4 (N.D. Ill. June 21, 2021) (finding that the plaintiff "ha[d] not demonstrated, through additional records or otherwise, any prejudice that resulted from" the ALJ's failure to obtain further medical opinion evidence).

Sharon has failed to show error necessitating remand in the ALJ's failure to address the November 9, 2016 MRI.

## CONCLUSION

For the foregoing reasons, Plaintiff Sharon B.'s objection, ECF No. 17, is OVERRULED, and Magistrate Judge Jonathan E. Hawley's report and recommendation, ECF No. 16, is ADOPTED. Plaintiff's motion for summary judgment, ECF No. 13, is DENIED, and Defendant Acting Commissioner of Social Security Kilolo Kijakazi's motion for summary affirmance, ECF No. 14, is GRANTED. The Clerk is directed to enter judgment and close the case.

Entered this 1st day of August, 2022.

s/ Sara Darrow
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE